May it please the Court, I would like to reserve two minutes for rebuttal and I will be mindful of my time. At the outset I'd like to say that my co-counsel Mr. Lear is here beside me and that our primary focus today is on the moral turpitude argument, that it is categorically not a crime of moral turpitude. There are some secondary issues in this case related to the INA 237 offense under and the retroactivity argument as well as void for vagueness. Mr. Lear is here to address those issues if the Court has questions. Otherwise we essentially submit those on the brief and intend to focus solely on the moral turpitude issue. So I wanted to make that clear to the Court and like I said he can slide over if that's necessary. Thank you. So to my argument, we're not here to defend animal fighting or to defend animal harm. We're fundamentally here to defend the categorical approach. We have two arguments to the moral turpitude issue in this case. First that the board misinterpreted the federal animal fighting statute and that is an interpretation to which they are not owed deference. Our the generic definition of moral turpitude in this case, which is sort of a sub-generic definition that needs to be compared, is an impermissible interpretation that fails at Chevron Step 2 and that is because this quote socially degrading standard is too far divorced from the categorical approach. It doesn't do a elements matching but instead it looks at the worst possible harm of the activity generally not looking at the categorically what the defendant or a prosecutor must prove a defendant did and therefore is beyond what is permissible even at Chevron Step 2 and therefore unreasonable. So going to the first argument that the board misinterpreted the animal fighting statute. Fundamentally what they're saying is that it was quote the celebration of animal suffering for one's personal enjoyment. That the statute contained intentional infliction of harm or pain on sentient beings compelled to fight. What we're saying basically is that that is not contained in the statute. From a categorical perspective the statute is quite simple. It says knowingly sponsoring or exhibiting an animal in an animal fighting venture. So we're saying that the statute on its face is overbroad in that regard. The crime is done knowingly but the board is not analyzing what exactly is the actus reus which is very key to the categorical analysis. I'm just looking at the statute and there's a definition of the term animal fighting venture which refers to a fight or conducted or to be conducted between these two animals. So that's inherently included in what's prohibited an animal fighting venture. Right a fight between two animals but the intentional infliction of harm by the defendant is not included in that definition. Let me ask interject a question if I may. How can animals have a fight that's not going to be harmful to the animal that's on the losing side? Well I think I would say that there there even if there's harm in the activity a prosecutor doesn't need to prove that there's harm in order to obtain a conviction. And I think it's another question right to say that the sponsor intends that harm as if it's a malicious animal abuse crime. Okay but normally aren't people held to intend like the natural or probable or universal consequences of their actions? Well I think that that may be so but that in this statute if you look at the plain language and you look at the legislative history I think that it could be part one of the many pieces of the statute that there is this knowing probable harm but there is this is also a statute designed to regulate commerce and public health for disease. That's why it's a federal statute to transfer the chickens between different states. So that there's going to be grievous harm to every animal in every case. Thank you. So continuing as I just said the legislative history evinces multiple motivations whether it be a large statute designed to make it simple for prosecutors to obtain convictions because they don't need to go in and prove this is a malicious act. This is you know if you look for example there's an Oregon crime which isn't called aggravated animal abuse and it's in its elements are to quote maliciously kill an animal or quote knowingly torture an animal with malicious meaning intentionally acting with depravity of mind or reckless and reckless wanton disregard for life. So I think the board seems to equate it to a statute that's more more like that than this kind of broad prohibition. Yes the activity should be criminalized. That's not what our argument is. So assuming for the moment that we agree with the BIA that animal fighting is inherently abusive is there another problem with the statute. This says person knowingly sponsor an animal in an animal fighting venture and let's say we agree with the BIA that an animal fighting venture is inherently abusive. So is there another problem with this statute. Well I think you know I'll put it like this your honor that I think there's a difficulty when the moral turpitude analysis on a categorical level is allowing quote you know inherent characteristics of a statute to be assumed about about what the minimum conduct is. Oh are you saying no you're saying that if we agree with the BIA that an animal fighting venture is abuse of an animal or abuse of animals then the BIA's determination at 2156 a 1 is inherently a crime involving moral turpitude is is not problematic. Well I think what I'm saying is what I guess what I would say to that is that there is also an issue which was raised before in this case that it lacks a direct connection to human victims. When we say the moral turpitude generic definition is societal degradation societal damage. I mean we're still saying there has to be human victims in a sense. What is society if not these human victims that it affects and the attenuation between the human victims in this case because the board didn't say oh the animal victims are the problem here if there's these animals are grievously harmed and that's Malamin say in itself they said it's a societal damage and I think that the the attenuation between the societal that it's sort of like saying well when people watch violent video games or violent movies what is that how is that degrading them versus the comparison that they make to a you know in they compare that they could they quoted the case Gonzalez Alvarado from this court to say that a crime like incest is is inherently bad but that's because it was so similar to the crimes of child abuse and spousal abuse there was essentially a protected class of victims that they sought to protect so you have a very close in time victim whether it's not and that one may be different where you say where is this the social damage attenuated from the defendants actual actions would you like me to continue your honor just can I ask a quick question does we have we so-called chicken fighting or cock fighting is closely associated with illegal gaming gambling does that play a role here well yes I mean I think as we pointed out that the board has held since the 60s that illegal gaming is not a crime of moral turpitude I think that's a reason to prescribe it to criminalize it but I don't think that that I think that plays the idea that it's a broad prohibition and the concerns about illegal gaming are are prominent in the reason that it was criminalized okay that that's one of your arguments am I correct yes that's correct all right so again the simplistic nature of the animal fighting statute tends to show that it was this broad prohibition that doesn't contain from a minimum conduct standpoint complete moral turpitude in every possible way that it can and you know not that the board has to do this but often the board will show their the federal cases to prove that there is no such case where it could not contain moral turpitude on a categorical level the board doesn't show us any cases where okay here's you know federal case they're analyzing it on appeal and there was no possible way that it could not contain moral turpitude they are looking essentially at the legislative history the statute itself and they're basically just saying it's on its face and our argument is that on its face it does not contain the type of they're trying to push in that intentional affliction as if that's an intentional affliction of harm as if that's in every single case categorically and again this just highlights that you know this socially degrading standard while in this case you know obviously we're not here to defend the animal fighting it should be criminalized it works well with this case to say this socially degrading standard should control these moral turpitude cases but this this moral this standard is really an expansion in a lot of ways because it allows it to take any inherent you know they did like I said they described the activity in broad terms they describe it in terms that don't relate to exactly what defendants do categorically but just in a sort of general sense the worst ills of the crime and we argue that that is a dangerous precedent to allow a crime that on a categorical level may not contain every element but that because they can describe it generally historically as something that's abhorrent then therefore it can take over the crime like a legal hunting a crime like or even just a practice of legal hunting where you can use a fox to hunt a hound to hunt for a fox is just just to say not to say that that's exactly comparable but just to say that that is enough accepted by society that for us to say this crime is truly malum in say it's close comparison to activities that are allowed in society really blends creates the idea that it's now in prohibitive well I I would I would suggest that animal fighting is pretty pretty much looked upon with great disfavor in this country I mean look at that football player who went to jail for he was despised for dog fighting and I don't know the your honor I think you know I I don't I don't disagree that it has fallen out of favor with the American public I think again we just trying to say that to say that it's at the level that it's every time vile disqualifies a relief carries that kind of consequence is a little is too far to say that that's the pure judgment of the social mores especially when you have in the same year that our petitioner committed this crime the Puerto Rican legislator in both houses in 2007 declared it to be a cultural right Puerto Rico has three million US citizens so it has to weigh somewhat into the analysis and I'm noticing that my time is up so I'm gonna yield thanks for your planning purposes we'll give you an extra two minutes for your rebuttal argument so mr. Sabatino yes good morning your honors Sabatino Leo on behalf of the United States Attorney General and may it please this honorable court petitioners conviction for knowingly sponsoring or exhibiting to it a rooster in an animal fighting venture is a crime involving moral torpitude rendering him ineligible for cancellation of removal under the Immigration Nationality Act and really the first question to unpack here is what are the parameters of crimes involving moral torpitude and we've heard petitioner argue in his brief and to the court this morning suggesting that well crime involving moral torpitude is this unknown ideal well I will I will submit to this court that this court unequivocally held in its unblocked decision in Marmolejo Campos that crime involving moral torpitude is a big is an ambiguous phrase within the Immigration and Nationality Act to which the deference under step two of the Chevron analysis and I think really that's the unpacking of these issues that's really issue number one is petitioner seems to suggest that we now have to place parameters on crimes involving moral torpitude that there have to be these goalposts and these goalposts are fixed and cannot be moved but that flies in our opinion in the face of this this analysis on the Chevron what the court did here in Ortega was was it was remand for the purposes of discussing the possibility or the parameters of crimes involving moral torpitude and whether or not in every single instance it must involve a human victim and that was in accordance with their Nunez discussion I will say that in Nunez it was merely a suggestion and that was a sexual sexual case involving sexual violence so I would place it out of sort of that realm and say what the what the board does here is provides I think what Chevron commands which is a fulsome wholesome analysis for this court with regard to crimes involving moral torpitude. Mr. Leo if I may interject a question I was curious about this statute would it apply would the statute apply to any finding venture between any two animals so that if if for example some clever person figured out a way to train train rats to fight each other would that be a violation of this of this statute? Based upon my understanding and my interpretation of this particular statute yes sir yes your honor it would in fact be an animal fighting venture when you have an animal A versus an animal B that attack one another I think what's most important to analyze here and I think petitioner goes on and on about about intent and what is the intent for purposes of this particular statute and I don't think petitioner ever ever I feel as though petitioner conceded this fact in his brief to this court is that there is this is a specific intent with regard to knowingly engaging and that's the intent that's required for purposes of crimes involving moral torpitude I think what petitioner is trying to do here is shift this analysis to now one has to have a specific intent to be morally inferior or morally compromised like somehow in that subjective mind of that individual has to have that intent and saying what I am engaging in is now morally compromised if that were the case your honors my opinion is that there would never be a crime involving moral torpitude we have sociopaths that run run amok amongst this planet that think they're socially compromising behavior is perfectly acceptable and I feel as though that's a shift and that's an attempt I think that this way this court from finding really here is that what the board did with regard to crimes involving moral torpitude and that is specifically that it need not involve always a human victim or I'm sorry I thought you had a question your honor need not involve always involve a human victim and I think if we agree and I think we should agree here with regard to this wholesome analysis with regard to crimes involving moral torpitude not being subject to these parameters the next issue really is to unpack is to whether or not this is categorically a crime involving moral torpitude and this court has has repeatedly indicated in its case law before it that says really there are two types of crimes involving moral torpitude one involving fraud and one revolving reprehensible conduct conduct that is vital base grade involving depravity we can agree that this is not a fraud case and we can set aside but that reprehensible conduct aspect of crimes involving moral torpitude what in fact does that entail and this court has continuously stated that it is there's a comparable mental state and there's socially debased vile grave behavior on the part of of the individual and I think if you look at this this issue too and you unpack it correctly the couple of mental state is that was played we are not here now to re-argue what the couple of mental state was the individual here petitioner pledged 2009 to a specific intent crime that in my opinion is off the table so now we go to this second prong or second phase of this crime involving moral torpitude analysis and we say is this socially debased socially grave immoral behavior and I think it's clear from the legislative history dating back really to the colonies as to far as how we looked as a society on animal fighting and animal cruelty and I think it was a great example by your honor judge Ezra that said Michael Vick situation and how the the how the nation reacted to that situation that involved dog fighting but I will invite this court's attention to the 1966 animal welfare act and the subsequent legislative history involved in that and how year after year after year it's been progressively viewed as something that is amoral to society that is does not fit neatly within society's moral bounds and I will say that petitioner mentions Puerto Rico but in December of 2008 the president of the United States signed into law my understanding is law banning animal fighting in all the territories and commonwealths of the United States in addition all 50 states have laws on the book on the books with regard to animal fighting ventures this increasing national consensus against this activity I think is echoed by senator Susan Collins who I've quoted with regard to the legislative history with regard to animal fighting as well as justice Scalia I think it's the uh the Paris supreme court case saying it's not a situation well it doesn't harm me so it's perfectly acceptable by societal norms it is not these are situations in which these animals are many times drugged are hyper aggressive and fight to the end all be all to the very death of of of uh of that particular animal all for the benefit and joy of those spectators if there is a crime that is more morally torportudinous when it involves a non-human victim I cannot think of one off the top of my head and I think it's also important to recognize that petitioner attempts to equate this to simply watching violent video games which are and I'm not a technological expert but zero one zero bits on a computer screen that mimic violent activities among these play characters these are sentient beings on planet earth that we as a society have viewed animal fighting in condemnation so I think that's another red herring to sort of equate video game watching with actually knowingly exhibiting or sponsoring a rooster in an animal fighting venture and I also think that the the comparison uh and I and I've mentioned that in my brief and I do quote president Roosevelt with regard to hunting and how my our belief is hunting is conservation and this idea to equate this pain and suffering inflicted on sentient beings for hunting purposes of to hunting is really another red herring in this particular case I think we are in a situation where yes animal fighting involves gambling but it also involves narcotics and gangs with regard to commerce and especially relevant to this day the the pandemic of the bird flu as well as morally compromising behavior for individuals to cheer on fighting to the death of sentient beings and as a result we think that with regard to issue number one and issue number two there are this this limitation on this ambiguous statute that this court has held is ambiguous to somehow only place it on human victims is completely wrong and in contravention to this court's very precedent and that too that the petitioner's conviction is categorically a crime involving moral culprity for everything that has been mentioned here as well as in my brief and I will in turn for the remaining arguments as as petitioner uh asserted that we would rest on our briefs I will say that I would invite this to uh the retroactivity analysis which I think is is another red herring so to speak which is a non-starter because retroactivity involves even get there olivis malta tells us that you have to have an abrupt change in law and I think petitioner concedes that there's not an abrupt change in law here there's not an abrupt change in law by any stretch so I don't think we get to that categorical bet that montgomery ward analysis for purposes of retroactivity but if this court deems deems it we need to move on to montgomery ward I would invite this court's attention to the briefing on the montgomery ward factors and that petitioner fails to satisfy any of them and that the retroactive application of this is perfectly fine I would also indicate and I think this is really what petitioner is trying to argue and trying to shoehorn here is that cimt's crimes involving moral turpitude are unconstitutionally vague but we know full well as mentioned in my brief that again binding precedent on this court and if there are if there are no further questions from this panel uh I would uh I would I would say that I am complete at the moment I would I would ask that the petition for review be denied your honors and I thank you very much for your time and in interesting setting thank you okay thank you mr leo and uh the questions from hearing no questions well thank you thank you your honors mr too little and uh with with the court clerk change the clock from one minute to three minutes um okay please proceed mr to the thank you your honors um well I would just briefly respond um you know I will say with regard to hunting to say that the comparison is not apt you know a lot for example a lot of bow hunters to say that hunting is purely utilitarian that has no comparison to this crime that it's not fundamentally done for sport done for enjoyment I was going to say that a lot of bow hunters a famous shot is a double lung puncture to hit an elk with through an with an arrow so and to say that that's done uh in today's modern times for the purpose of food or something like that I'm not arguing whether it's right or wrong or what it is but I'm saying that the comparison is is similar in that way um again I think our major argument is not that this behavior should be defended or that it's quote moral but that this that the categorical approach is very important and it's being eroded in these kind of cases where the socially degrading standard allows a sort of subjective idea about the whole activity itself and not just what the person did I mean if we say does a drug person who possesses marijuana a small amount of marijuana or a small amount of drug in a sense right are culpable for all the ills of narco trafficking and extortion and murder in a sense they are right because they're contributing they're fueling it but to hold that individual person responsible for all the ills to society is something that I think the categorical approach shouldn't allow like you said we're not arguing that uh disagreeing really with with government that this is an activity that should be criminalized and it should not be allowed but again finding that it's a crime of moral turpitude or not finding that it's a crime of moral turpitude will not affect the ability for it to be criminalized and for people to be punished um you know at the at the end of the day um we argue that the statute that right on its face is overbroad given that it's a federal statute meant to regulate a lot of different things and that it should be regulated um but moral turpitude analysis is fundamentally about what crimes are so vile so evincing of the evil mind that they should be disqualified completely from relief for example my own petitioner here he's been in the united states for 30 years he has this one single federal misdemeanor he has three u.s citizen children one of his children is a in other than you know this one crime he's completely disqualified for cancellation of removal um and i think that that's just to highlight the extreme consequence of the moral turpitude finding so uh again we don't argue that this crime is categorically uh we don't argue that it shouldn't be criminalized but we do argue that the court should be wary of according moral turpitude under this generic uh formulation thank you very much for your time your honor i Mr. Doolittle well this argument has concluded and the case shall be submitted but before we break to the next matter i want to just comment that the arguments on both sides from Mr. Doolittle and Mr. Leo were exceptionally well done and from my perspective and i thank you both thank you your honor thank you your honor and thank you Mr. Leo thank you okay
judges: Gould, Ikuta, Ezra